24-01044MB

## AFFIDAVIT IN SUPPORT OF
## APPLICATION FOR SEARCH WARRANT

I, Wann Reed, a Special Agent with the United States Department of Homeland Security (DHS), Homeland Security Investigations (HSI), Nogales, Arizona, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.     Your Affiant is a Special Agent with the United States Department of Homeland Security (DHS), Homeland Security Investigations (HSI). Your Affiant has been a Special Agent with HSI since April of 2023. Your Affiant is assigned to the Assistant Special Agent in Charge (ASAC), Nogales, Arizona office. As a Special Agent with HSI, Your Affiant is responsible for investigating and enforcing violations of federal law to include the enforcement of controlled substances, immigration, money laundering, and various Customs violations.

2.     As a Special Agent for HSI, I am responsible for investigating laws enumerated in Title 8, Title 18, and Title 21 of the United States Code.  Included in my responsibilities is the investigation of illicit contraband-smuggling, including narcotics-smuggling, across the United States border.  In preparing to become a Special Agent, I attended the Basic Criminal Investigator and the HSI Special Agent training programs at the Federal Law Enforcement Training Center in Glynco, Georgia.

3.     Through my training and experience, as well as the training and experience of other law enforcement officers participating in this investigation, I know that drug-traffickers commonly use cellular telephones to communicate with their narcotics associates and to facilitate the commission of their narcotics offenses.  These cellular telephones usually contain electronically stored data on or within the cellular telephones, including, but not limited to, contact names and numbers of narcotics associates, call details including call history, electronic mail (email) messages, text messages and/or text message history, and digital images of the drug-trafficking associates and/or activity, all of which can be used to identify and locate narcotics-trafficking associates, to identify

methods of operation of the drug-trafficking organizations (DTOs), and to corroborate other evidence obtained during the course of the current investigation.

4.     By virtue of my employment as a Special Agent, I have performed various tasks, which include, but are not limited to: (a) functioning as a surveillance agent, thus observing and recording movements of persons trafficking in drugs and those suspected of trafficking in drugs; (b) interviewing witnesses, cooperating sources ("CSs") and sources of information ("SOIs") relative to the illegal trafficking of drugs and the distribution of monies and assets derived from the illegal trafficking of drugs (to include the laundering of drug-trafficking proceeds); and (c) functioning as a case agent, entailing the supervision of specific investigations involving the trafficking of drugs and the laundering of drug-trafficking proceeds.

5.     In the course of conducting drug investigations, I have personally interviewed informants and persons involved in the distribution of illegal drugs.  I have consulted with other experienced investigators concerning the practices of drug-traffickers and the best methods of investigating them.  In preparing this Affidavit, I have conferred with other Special Agents and law enforcement officers involved in this investigation.  Furthermore, I have personal knowledge of the following facts or have learned them from the individuals mentioned herein.

6.     Because this affidavit is being submitted for the limited purpose of securing a warrant to search the Target Devices, your Affiant has set forth only the facts which your Affiant believes are necessary to establish probable cause to search the Target Devices.

### PURPOSE OF THE AFFIDAVIT

7.     Your Affiant makes this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to examine the cellular telephones described more particularly in Attachment A, (hereafter referred to as "**Target Device #1** or **TD #1**"), and to extract the electronically stored information set forth in Attachment B, which represents evidence and/or instrumentalities of the criminal violations further described below.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

8.  The electronic communication devices to be examined are described as:

a.  one **(1) purple or silver colored Motorola cell phone**, IMEI unknown – hereinafter, **Target Device #1**, or **TD #1**;

the particular **TD #1** to be searched pursuant to the attached Application are further described in Attachment A hereto.

## BACKGROUND ON SMARTPHONES

9.  Based upon my knowledge, training, and experience, as well as information related to your Affiant by law enforcement officers and others experienced in the forensic examination of electronic communication devices, your Affiant knows that certain types of cellular telephones referred to as "smartphones" (such as **TD #1**) generally offer more advanced computing ability and internet connectivity than standard cellular telephones. Provided that internet access has been purchased through an electronic communication service provider for a particular smartphone, a smartphone is capable of running complete operating system software, has full access to the internet and/or electronic mail (including file attachments), is capable of text and instant messaging, can create and edit documents created with computer software, is capable of storing large amounts of data, and can be interfaced with desktop and laptop computers.

10.  As described in Attachment B hereto, this affidavit seeks permission to locate not only data files that might serve as direct evidence of the crimes described in the warrant, but also for evidence that establishes what individual(s) used **TD #1** as well as the purpose of its use. Additionally, this affidavit seeks information about the possible location of other evidence.

11.  As described in Attachment B hereto, this affidavit also seeks permission to search and seize certain electronic records that might be stored within **TD #1**. Some of these electronic records might take the form of files, documents, or other data that are user-generated. Some of these electronic records, as explained below, might take a form that becomes meaningful only upon forensic analysis.

3

12.    Although some of the records requested in this affidavit might be found in the form of user-generated documents (such as electronic format documents and picture and movie files), electronic communication devices (such as **TD #1**) can contain other forms of electronic evidence that are not user-generated.  In particular, an electronic communication device may contain records of how it has been used and/or the person(s) who utilized the electronic communication device.  Based upon my knowledge, training, and experience, as well as information related to me by law enforcement officers, and other persons involved in the forensic examination of electronic communication devices, I know that:

    a. Data on electronic communication devices not currently associated with any file can provide evidence of a file that was once on the electronic communication device, but has since been deleted or edited, or of a deleted portion of a file;

    b. Virtual memory paging systems can leave traces of information on an electronic communication device that can be used to determine what tasks and processes were recently in use;

    c. Web browsers, e-mail programs, social media platforms, and chat programs store configuration information on the electronic communication devices that can reveal information such as online nicknames and passwords;

    d. Operating systems can record additional information, such as the attachment of peripheral electronic devices, and the number of occasions on which the peripheral electronic devices were accessed;

    e. Computer file systems can record information about the dates that files were created and the sequence in which they were created.  This information may be evidence of a crime and/or indicate the existence and/or location of evidence in other locations on the electronic communication device;

    d. When an electronic communication device has more than one user, files can contain information indicating the dates and times that the files were

created as well as the sequence in which the files were created, and whether a particular user accessed other information close in time to the file creation dates, times, and sequences;

e.  The types of evidence described above may be direct evidence of a crime, indirect evidence of a crime indicating the location of evidence or a space where evidence was once located, contextual evidence identifying an electronic communication device user, and contextual evidence excluding an electronic communication device user.  All of these types of evidence may indicate ownership, knowledge, and intent to commit a given offense; and

f.  The foregoing type of evidence is not "data" that can be segregated, that is, this type of information cannot be abstractly reviewed and filtered by a seizing or imaging agent and then transmitted to investigators.  Rather, evidence of this type is a conclusion, based on a review of all available facts and the application of knowledge about how electronic communication devices operate and how electronic communication devices are used.  Therefore, contextual information necessary to understand the evidence described in Attachment B hereto also falls within the scope of the warrant.

## CHARACTERISTICS OF INDIVIDUALS INVOLVED IN DRUG-TRAFFICKING ORGANIZATIONS

13.  Based upon my knowledge, experience, and training in DTO investigations, as well as the training and experience of other law enforcement officers with whom your Affiant has had discussions, your Affiant knows that there are certain characteristics common amongst individuals involved in DTOs.  Individuals involved in drug-trafficking activity tend to:

a.  Retain records pertaining to financial transactions and the persons for whom the transactions are being conducted;

b. Collect data pertaining to other co-conspirators involved in drug-trafficking activity, including drug types and quantities provided, as well as monies owed and/or paid for illegal controlled substances;

c. Possess and maintain records reflecting bank transactions and/or money transfers;

d. Maintain collections of records that are in a digital or electronic format in a safe, secure and private environment, including electronic communication devices (such as the Target Devices). These records are often maintained for several years and are kept close in close proximity to the drug-trafficker, usually at the individual's residence, to enable the drug-trafficker to review the records, which are highly valued;

e. Correspond with and/or meet with other drug-trafficking associates to share drug-trafficking information and/or materials;

f. Retain correspondence from other drug-trafficking co-conspirators relating to drug-trafficking activity; and

g. Maintain lists of names, addresses, and/or telephone numbers of individuals with whom the drug-traffickers have been in contact and/or conducted drug-trafficking activity.

**PROBABLE CAUSE**

14.    On July 19, 2024, at about 1:22 a.m., Aida GUERRERO, a lawful permanent resident, entered the US from Mexico at the DeConcini POE in Nogales, Arizona. GUERRERO was driving a silver 2016 Ford Fusion with Arizona license plates, and the car was registered to her. GUERRERO had an adult passenger identified as Maria Gonzalez in the car with her. The passenger told the primary CBPO that they crossed into Mexico a few hours earlier to go to the casino in Nogales, Sonora, Mexico. The Vehicle Primary Systems were not working at the time GUERRERO entered, so officers were inspecting the hoods and trunks of incoming cars. GUERRERO provided a negative customs declaration to the officer.

6

15.     GUERRERO told the officer that it was her car and acknowledged that she did not have any drugs, alcohol, tobacco, medication, firearms, or more than $10,000 USD.  The officer inspected the trunk of the car and saw the spare tire cover was not sitting properly.  The officer could see the spare tire.  The officer tapped the spare tire with a flashlight and noticed it was hard.  The officer also noticed that the spare tire was a newer full-size tire, instead of the thinner donut-style tire usually in these cars.  The officer noticed the bracket holding the spare tire was loose.  The officer tried to lift the spare tire with one hand and found it to be significantly heavier than a normal size tire.

16.     Officers x-rayed the car and found anomalies under the front seats, in the rear seat area, and in the trunk area.  A trained CBP dog alerted to a trained odor coming from the inside of the car.  Officers searched the car and found 30 packages of suspected narcotics hidden underneath the two front seats, inside the rear seat and inside the spare tire.  A field test came back positive for fentanyl and methamphetamine.  Twenty-five packages contained fentanyl pills and weighed 22.32 kgs.  Five packages contained methamphetamine and weighed 4.22 kgs.

17.     Based on your Affiant's training and experience, as well as the training and experience of other law enforcement officers involved in the investigation, your Affiant is aware drug couriers and coordinators routinely communicate via cellular telephones to coordinate the transportation and delivery of drugs from Mexico to the United States.  Your Affiant is also aware that drug coordinators routinely utilize the Global Positioning System (GPS) function on drug couriers' cellular telephones to monitor the location of the load vehicle.  This can be done through various applications or features, such as a 'locate/find my smartphone' function or through a shared location.

18.     **TD #1** is currently in storage at 41 Paseo De Yucatan, Rio Rico, Arizona in the HSI Nogales evidence vault.  In my training and experience, I know that devises like **TD #1** have been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when **TD #1** first came into the possession of HSI.

**CONCLUSION**

19.     Your Affiant submits that there is probable cause exists to search **TD #1** for the items set forth in Attachment B hereto and that **TD #1** may contain evidence identifying: (1) cellular telephone numbers used by drug-trafficking associates; (2) telephone calls conducted with drug-trafficking co-conspirators (to include time, date, and duration of calls); (3) photographs of and/or with drug-trafficking co-conspirators, illegal controlled substances, and/or currency; (4) text and/or voicemail message communications (including time and date) with drug-trafficking associates; (5) electronic mail and social media internet sites accessed by the user of the Target Devices; (6) GPS location data; and (7) usernames and/or passwords utilized by the user of the Target Devices to access electronic mail and social media internet sites.

20.     Your Affiant believes that **TD #1** may also contain evidence relating to the commission of a criminal offenses including, but not limited to, importation of controlled substances, in violation of 21 U.S.C. § 952(a), conspiracy to import controlled substances, as well as in violation of 21 U.S.C. § 960, possession with intent to distribute a controlled substance, in violation 21 U.S.C. § 841, conspiracy to distribute a controlled substance, in violation of 21 U.S.C. § 846, use of telecommunication facility, in violation of 21 U.S.C. § 843(b), bulk cash smuggling, in violation of 31 U.S.C. § 3538, and money laundering, in violation of 18 U.S.C. § 1956.

Respectfully, submitted this _____4th_____ day of October, 2024.

WANN L REED    Digitally signed by WANN L REED
Date: 2024.10.04 13:24:22 -07'00'
_____
Special Agent Wann Reed
Homeland Security Investigation

Sworn and subscribed before me this __4th___ day of October, 2024.

Honorable Judge Eric J. Markovich
United States Magistrate Judge

24-01044MB

**ATTACHMENT A**

The property to be searched is:

1: **(1) purple or silver colored Motorola cell phone**, IMEI unknown – hereinafter,

**Target Device #1**, or **TD #1**; and currently in the custody of the United States Department

of Homeland Security (DHS), Immigration and Customs Enforcement ("ICE"), Homeland

Security Investigations ("HSI").

 

24-01044MB

## ATTACHMENT B
## PARTICULAR THINGS TO BE SEIZED

1. All records on **TD #1**, as described in Attachment A, that relate to violations of 21 U.S.C. §§ 952 and 846, and involve Aida GUERRERO and other known and unknow co-conspirators, including:

   a. Cellular information: cellular numbers, cellular service providers, caller identifications displaying sent, received, dialed, and missed calls;

   b. Text information: text messages received, sent, drafted, and deleted

   c. Photographs: photographs taken, received, sent, saved, and deleted;

   d. Videos: video taken, received, sent, saved, and deleted;

   e. Audio: audio taken, received, shared, sent, saved and deleted;

   f. Emails: emails sent, received, drafted, saved and deleted;

   g. Contact information: telephone contact list displaying names, addresses, telephone numbers, and deleted information;

   h. User attribution: evidence of user attribution showing who used or owned the telephones as described in Attachment A at the time things described in this warrant were created, edited, or deleted, such as logs, phone books, saved usernames and passwords, documents and browsing history;

   i. Notes: all bank records, credit information, account information or other financial information and records;

   j. Travel information: any information recording travel arrangements during the time period set forth in the Affidavit and until the present;

   k. Internet: records of Internet Protocol addresses used, and any records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

l.    Records pertaining to financial transactions derived from the drug-trafficking activity.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage and any photographic form.

2.    In some cases, the Target Smartphone may be damaged beyond repair, password protected, or otherwise inoperable, and less invasive data analysis techniques will not accomplish the forensic goals of the examination. In these cases, an analysis technique referred to as "chip-off" may be implemented to conduct the data extraction process. Chip-off is an advanced digital data extraction and analysis technique which involves physically removing flash memory chips from a subject device and then acquiring the raw data using specialized equipment. This process renders the wireless communication device unusable.